Travis, Appellant, v. Teter.

Argued January 7, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused May 14, 1952.

*E. C. Marianelli*, with him *R. W. Trembath*, for appellant.

*Mitchell Jenkins*, with him *James P. Harris*, for appellees.

OPINION BY MR. JUSTICE BELL, April 1, 1952:

This is an action of mandamus. Appellant, a *temporary* school teacher, challenged the validity of an "unsatisfactory rating" given her by the county superintendent (one of the defendants) at the end of the second year of her services as a teacher, and prayed (a) that the unsatisfactory rating be set aside, and the county superintendent be required to issue a satisfactory rating for the last four months period; and (b) that the defendant school districts* be directed to tender to her a regular contract of employment as a permanent professional teacher; and (c) that she be awarded damages in the amount of the salary which she lost by reason of the unsatisfactory rating.

Appellees in their answers denied any impropriety or illegality in plaintiff's rating, and likewise denied the other claims and prayers of the plaintiff. The case was tried before a jury, which found a special verdict first, that the official act of the county superintendent of schools in giving the plaintiff an unsatisfactory rating was not based solely upon his personal belief and judgment; and second, that the county superintendent of schools in giving plaintiff an unsatisfactory rating relied solely upon the recommendation of the supervising principal. We shall hereinafter discuss the effect of these findings and whether any questions of this character should have been submitted to the jury.

The court below entered judgment for plaintiff on the special findings of the jury; refused the motion of the county superintendent for judgment n.o.v., and ordered that a writ of mandamus issue directing him to

---

* Plaintiff had entered into a contract of employment with defendant School District of the Township of Lehman. The School District of the Township of Jackson was also named as defendant because the two School Districts were consolidated after the execution of the contract.

rerate plaintiff on the basis of his own judgment; but refused to direct the county superintendent to give plaintiff a "satisfactory rating". The court also entered judgment n.o.v. in favor of the school districts and refused to enter a money judgment against them for appellant's back salary. Appellant appeals from these orders of the court.

The facts were as follows: Appellant was employed as a temporary teacher (without tenure status) in the Lehman Township Schools during the school years 1947-1948 and 1948-1949. Appellant, during the period from 1947 to 1949, received three intermediate satisfactory ratings. On June 29, 1949, appellant received from the county superintendent an *unsatisfactory* rating, covering the entire two year period. As a result of this unsatisfactory rating, appellant was not offered a contract of employment as a professional permanent teacher by the School District of Lehman Township, and this is probably the main reason for her suit.

We must consider the questions involved in the light of certain principles of law which are well established and directly applicable. Mandamus is an extraordinary writ which lies to compel the performance of a ministerial act or mandatory duty where there is *clear* legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy: *Borough of Easton v. Lehigh Water*, 97 Pa. 554, 560; *Goodman v. Meade*, 162 Pa. Superior Ct. 587, 60 A. 2d 577. However, even in such cases its issuance is not a matter of right but in certain circumstances is a matter for the sound discretion of the court: *Waters v. Samuel*, 367 Pa. 618, 80 A. 2d 848. It is well settled that in a mandamus proceeding a Court can compel a public official who is vested with a discretionary power to exercise that discretion; but (unless the discretion is arbitrarily or fraudulently exercised or is based upon

a mistaken view of the law) it cannot interfere with or control the official's discretion or judgment. Expressed another way, it is the discretion and judgment of the official (who is vested with a discretionary power) which prevails and not that of a Court or a jury or a person aggrieved; and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable: *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514, 55 A. 2d 534; *Tanenbaum v. D'Ascenzo,* 356 Pa. 260, 51 A. 2d 757; *Anderson v. Philadelphia,* 348 Pa. 583, 36 A. 2d 442; *Souder v. Philadelphia,* 305 Pa. 1, 156 A. 245.

Appellant's position is that the unsatisfactory rating is void (1) because the county superintendent did not exercise his own judgment in giving the rating; (2) because the supervising principal participated in the rating; (3) because the rating was given on June 29, 1949, several weeks after the expiration of the school term; and (4) because the county superintendent failed to hold a hearing on appellant's rating and consequently she was deprived of due process.

The Act in existence at the time this suit was brought did not state expressly or clearly that the county superintendent should determine the rating of temporary teachers, but as that is the theory on which appellant has based her claim and on which appellee has based its defense, and as the amendment of May 11, 1949, P.L. 1182, impliedly recognized that power and duty, we shall decide the plaintiff's claim on that basis. Plaintiff's first and second contentions will be considered together. The duty of the county superintendent with respect to rating a temporary teacher is set forth in the Act of May 18, 1911,* as follows: "It shall be

* P. L. 309, §1201, as amended by the Act of May 2, 1945, P. L. 371.

the duty of the county superintendent of schools . . . to notify each temporary professional employe, at least twice each year during the period of his or her employment, of the professional quality, professional progress, and rating of his or her services; . . ."

The rating made by Mr. Teter, the county superintendent of schools, required a consideration of four major factors: I. Personality; II. Preparation; III. Technique; and IV. Pupil Reaction. These four headings were subdivided into 27 parts pertaining to specific characteristics and qualifications. Mr. Teter had been a teacher for 31 years and had served as assistant superintendent of schools for 10 years and superintendent for several years. He did not know plaintiff personally, although he and her husband were members of the same Kiwanis Club. Mr. Teter, in spite of many complaints concerning plaintiff's teaching, her personality, her preparation, and pupil reaction, gave her a satisfactory rating in the first three quarters of her two year term. This was mainly because the criticisms were verbal and were not accompanied by an anecdotal written record or report, and in the hope that she would improve, or would not continue teaching after her two year contract.

In spite of appellant's argument to the contrary, it seems hardly necessary to point out that three satisfactory ratings do not of themselves entitle a teacher to four satisfactory ratings; and four, not three, were required for this plaintiff to become entitled to the tenure status of a permanent teacher. In a four lap race the leader at the end of the third lap is often not the winner and sometimes does not even finish.

Mr. Teter rated plaintiff as *unsatisfactory* for the two year period. His rating was based on adverse reports which he had received from time to time from various persons as to plaintiff's performance as a

teacher, including a number of reports from the assistant county superintendent, and from the supervising principal, and from the succeeding supervising principal; also discussions with the president and with the secretary of the school board, and on at least two occasions with the father of one of the pupils, who in turn had discussed the plaintiff's qualifications with the parents of other pupils; as well as on the adverse written anecdotal report of the supervising principal. All of these persons considered plaintiff unsatisfactory and their comments and criticisms were adverse. The anecdotal record which was prepared by the supervising principal who was directly in charge of plaintiff contained a rating adverse to the plaintiff with respect to her personality, her emotional stability, her professional relationships, her judgment, her preparation, her professional attitudes, her civic responsibility, her dependability, her classroom generalship, her ability to compromise, and the reaction of her pupils. The county superintendent's testimony was corroborated by five witnesses and it is easy to understand why he finally gave plaintiff an "unsatisfactory" rating.

There was no averment or proof of fraud or that the rating was arbitrary or capricious. Appellant objects to this rating mainly (a) because the supervising principal participated in the rating; (b) because the assistant county superintendent said that one of her classes was well conducted or good; and (c) because the county superintendent did not exercise his own judgment in giving her the rating since he relied solely upon the recommendation of the supervising principal, as is evident from a letter he wrote plaintiff dated June 30, 1949, advising her that the supervising principal had recommended an unsatisfactory rating and that it has been the policy of the county school office to accept the recommendation of supervising principals

in the rating of teachers. We do not give to any of these contentions the force and effect which appellant does.

Most executives and public officials, in formulating decisions, must, of necessity, frequently rely (in part at least) upon information received from and recommendations made by subordinates. The Act of 1911 (as amended), supra, does not require, and a reasonable construction thereof makes clear that it does not contemplate that the county superintendent rate all of the 1335 teachers within the county on the basis of his own personal knowledge of them, and without any consideration of recommendations made by the supervising principal, who was in the best possible position to know the teaching capabilities and other essential qualifications of the teachers under his immediate supervision.

Although the right, the discretion, and the duty to rate a teacher is given to a county superintendent and not to a Court or jury, the Court left to a jury two questions on which they found a special verdict: (1) that the official act of the county superintendent in giving plaintiff an unsatisfactory rating was not based *solely* upon his personal belief and judgment; and (2) that the county superintendent in giving plaintiff an unsatisfactory rating relied *solely* upon the recommendation of the supervising principal. The first finding even if true is irrelevant; the second finding is contrary to all the testimony and has no adequate evidence to support it. These questions under the evidence in this case were matters of law for the Court, and should not have been submitted to a jury. Cf. *Olshefski's Estate,* 337 Pa. 420, 11 A. 2d 487; *Cauffman v. Long,* 82 Pa. 72; *Barrett v. Heiner,* 367 Pa. 510, 80 A. 2d 729. Parenthetically it would seem not only impractical and intolerable to allow a jury to determine in every case involving a disappointed teacher whether a school superintendent had exercised his personal dis-

cretion and if so, what factors he relied upon in such exercise, but it would create scholastic and financial chaos because until such claim or suit was decided by a jury and ultimately by an appellate Court the school directors could not safely engage or pay a new teacher. What we said in *Waters v. Samuel*, 367 Pa. 618, 622, 80 A. 2d 848, is particularly appropriate: "If the interests of the general public would be injuriously affected, or if the object sought to be obtained . . . is likely to create disorder and confusion in municipal or governmental departments, *the courts may, in their discretion, refuse to issue the writ*: Sinking Fund Commissioners v. Philadelphia, 324 Pa. 129, 135, 188 A. 314; Wallace v. Board of Education of Los Angeles, 147 P. 2d 8; Oystermen's Dock Co. v. Downing, 249 N.Y.S. 558, 232 App. Div. 295; 34 Am. Jur. 833, §40; 35 Am. Jur. 16 §240; 55 C.J.S. Mandamus, §10a."

Appellant's next contention that the rating is void because made after the termination of the school term is likewise without merit. This rating was made on June 29, 1949, three weeks after the last examination. The School Code* states that the county superintendent must "notify each temporary professional employe, at least twice each year *during the period of his or her employment*,** of the . . . rating . . .". Plaintiff's contract was dated September 14, effective September 1, 1948, and provided, inter alia, "I. That said Temporary Professional Employe shall under the authority of said board [of school directors] . . . and subject to the supervision and authority of the . . . Supervising Principal teach in the said school district for a term of nine months [ending June 1; before the end of the examinations or the school term] for an annual com-

---

* Act of May 18, 1911, P. L. 309, as amended.
** Italics throughout, ours.

pensation of $2,250 Dollars, . . .. II. That if said Temporary Professional Employe shall have served the above named School District *for a period of two years* and shall have received a satisfactory rating during the last four months of the second year from the County Superintendent or District Superintendent, the above employee thereafter shall be considered a professional employe . . .. IV. That this contract shall continue in effect until the expiration of two years of satisfactory service rendered to the School District above named by the said Temporary Professional Employe, . . .".

It is not clear when the two year period of plaintiff's employment expired, but it is certain that both the statute and the contract should receive a reasonable construction. It is reasonable to assume that the legislature and the contracting parties knew that a wise and fair appraisal of performance and a *rating* can best be made after the teacher's entire probationary period has ended, and not during or prior to the last few days of an examination period; and therefore must have intended to give the county superintendent a reasonable period after the end of the last examination to determine whether the rating should be satisfactory or unsatisfactory. The unreasonableness of plaintiff's construction is apparent when we consider that if conditions had been reversed and the county superintendent had given her a satisfactory rating one day after June 1, or one day after the examinations, her rating could have been challenged and voided. It is easy to guess what her attitude and contention would have been in such a case.

The plaintiff next contends that even though she did not request a hearing by the superintendent, the denial of a hearing to enable her to obtain tenure status by qualifying as a permanent professional teacher, was a violation of due process. There was no

provision in this statute authorizing or providing for a hearing for a temporary teacher *who desired to attain permanent status,* and in the absence thereof, plaintiff had no property or other vested right in or to the position or status of a permanent teacher. Moreover, no liability or penalty was imposed upon her by the action of the county superintendent. It is clear, therefore, that the superintendent's failure to hold a hearing for the purpose of giving plaintiff a rating as a permanent teacher was not a violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States nor of Article I, Section 9 of the Constitution of Pennsylvania: Cf. *Armour Transportation Co. v. Pennsylvania P.U.C.,* 138 Pa. Superior Ct. 243, 249, 250, 10 A. 2d 86; *National Auto. Corp. v. Barfod,* 289 Pa. 307, 137 A. 601; *Kariher's Petition (No. 1),* 284 Pa. 455, 470, 131 A. 265.

We have considered all the other contentions made by appellant but deem further discussion unnecessary.

To summarize: we hold that the county superintendent in determining the rating of this plaintiff had a right to consider the statements, recommendations and report of the supervising principal and of others; that the county superintendent's rating of plaintiff as unsatisfactory was within his power and discretion, and was amply and legally justified; and that there was no adequate evidence that the superintendent's rating was arbitrarily or fraudulently or illegally made.

The judgment entered in favor of the school districts non obstante veredicto is affirmed; the order of the lower court issuing mandamus and directing E. S. Teter, the county superintendent, to rerate the plaintiff for the last four months of her two year contract is reversed, and judgment is here entered for E. S. Teter; costs to be paid by appellant.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is not clear how the appellant in this case could receive satisfactory ratings for three terms and then at the fourth term be given an unsatisfactory rating which covered *all* four terms. The rating for the fourth term could not possibly retroact to the previous three terms. If the teacher's work was unsatisfactory for the fourth term and that of itself disqualified her for the permanent position, the decision of the county superintendent would be understandable and acceptable, but it does not comport with logic to say that the fourth term unsatisfactory rating rendered the *previous* three satisfactory terms unsatisfactory.

A baseball batter may strike out in the last inning, but this does not wipe out the runs he knocked in during the previous innings.

It would appear to me that Dorothy S. Travis, the school teacher in this case, was lulled into a sense of false security by the first three approval ratings. She could not have been competent and satisfactory for eighteen months and then become so incompetent as to vitiate even what went before. In accordance with all standards of fairness, a duty devolved upon the school authorities to instruct the teacher on her failings in the first, second and third terms, if any there were, and that duty was not met by waiting until the end of her provisional incumbency when opportunity to correct deficiencies no longer existed.

I would reverse the judgment n.o.v. and affirm the order of the lower court issuing mandamus to the county superintendent to rerate the plaintiff for the last four months of her two year contract.